**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Additional Attorney On Signature Page]

*Attorneys for Plaintiff,*
Scott Welk

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SCOTT WELK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br><br>v.<br><br>**BEAM SUNTORY IMPORT CO; JIM BEAM BRANDS CO., d.b.a. JIM BEAM,**<br><br>Defendants. | **Case No.:** 3:15-cv-00328-LAB-JMA<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Date:** May 4, 2015<br>**Time:** 11:15 a.m.<br>**Courtroom:** 14A<br>**Judge:** Hon. Larry A. Burns |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.    INTRODUCTION ........................................................................ 1

II.   STATEMENT OF FACTS ............................................................ 2

III.  LEGAL STANDARD ................................................................... 5

IV.   ARGUMENT ............................................................................... 6

    A.    DEFENDANT IMPROPERLY RELIES ON FACTS OUTSIDE THE
          COMPLAINT ..................................................................... 6

    B.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY CALIFORNIA'S
          SAFE HARBOR DOCTRINE ............................................... 6

        1. The Safe Harbor Doctrine and Defendant's Contention .......... 6

        2. Defendant Misapplies The Safe Harbor Doctrine As
           Pertaining to Labeling Laws ........................................... 8

             a) *No Authority Provided by Defendant to Establish
                That the Safe Harbor Doctrine Applies* ................... 9

             b) *The Case Law Cited by Defendant Supports the
                Notion That Defendant's Conduct Is Not Within
                the Protection of the Safe Harbor Doctrine* ............ 10

             c) *Recent Authority Supports Plaintiff's Position* ........ 11

    C.    PLAINTIFF HAS STATED VALID CLAIMS UNDER UCL
          AND FAL ........................................................................ 12

        1.    The Reasonable Consumer Inquiry is Premature ............... 13

2.    **Plaintiff Has Alleged a Likelihood of Deception Under The UCL and The FAL** ............................................15

    *a) The Case Law Cited in Defendant's Moving Papers Supports Plaintiff's Claims* ...............................16

    *b) Defendant's "Handmade" Representation Appears Prominently On the Label of Defendant's Product* ..........17

    *c) Defendant Imposes The Burden On Plaintiff and Consumers to Discover the Facts Underlying the "Handcrafted" Claim on Defendant's Product* ................18

    *d) Public Policy* ......................................................20

D.    **PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR INTENTIONAL MISREPRESENTATION** ..............................21

    1.  **A Reasonable Consumer Could Reasonably Rely On Defendant's Misrepresentation That its Product is "Handcrafted"** ......................................................21

    2.  **Plaintiff Has Sufficiently Alleged Defendant's Fraudulent Intent** ....................................................22

E.    **PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM** ..............24

V.    **ALTERNATIVE LEAD TO AMEND** ..................................24

VI.    **CONCLUSION** ............................................................25

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**TABLE OF AUTHORITIES**

**Cases**

*Anunziato v. eMacchines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................14

*Barker v. Riverside County Office of Educ.*,
  584 F.3d 821 (9th Cir. 2009) ........................................5, 15

*Beaver v. Tarsadia Hotels*,
  2014 U.S. Dist. LEXIS 90600, 9 (S.D. Cal. 2014) ..................7, 8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................7, 8

*Chabner v. United of Omaha Life Ins. Co.*,
  225 F.3d 1042, 1048 (9th Cir. 2000) ........................7, 8

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ........................21

*Chapman v. Skype Inc.*,
  220 Cal. App. 4th 217 (2013) ........................21, 23, 24

*Chern v. Bank of America*,
  15 Cal.3d 866, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976) ......23, 24

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152, 1165 (9th Cir. 2012) ........................7, 9, 10

*Fellner v. Tri-Union Seafoods, L.L.C.*,
  539 F.3d 237, 245 (3rd Cir. 2008) ........................10

*Figy v. Frito-Lay N. Am., Inc., No.*
  2014 WL 3953755 (N.D. Cal. 2014) ........................15

*Foman v. Davis*,
  371 U.S. 178, 182 (1962) ........................24

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ........................12, 13, 14

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Hall v. City of Santa Barbara,*
    833 F.2d 1270, 1274 (9th Cir. 1986) ......................................... 5

*Jou v. Kimberly-Clark Corp.,*
    2013 WL 6491158 (N.D. Cal. 2013) ...................................... 13

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939, (2002) ...................................................... 15, 17

*Kuenzig v. Hormel Foods Corp.,*
    505 F. App'x 937 (11th Cir. 2013) ........................................ 11

*Kwikset Corp. v. Superior Court,*
    51 Cal.4th 310, 328 (2011) .................................................... 1

*Lee v. City of Los Angeles,*
    250 F.3d 668, 688 (9th Cir. 2001) ......................................... 5

*Linear Technology Corp. v. Applied Materials, Inc.,*
    152 Cal.App.4th 115, 134-135 (2007) ................................. 13

*Loeffler v. Target Corporation,*
    58 Cal.4th 1081 (2014) ......................................................... 8

*Manchouck v. Mondelez Int'l Inc.,*
    2013 WL 5400285, at *3 (N.D. Cal. 2013) ...................... 19, 20

*McDougal v. County of Imperial,*
    942 F.2d 668, 676 (9th Cir. 1991) ......................................... 5

NL Industries, Inc. v. Kaplan,
    792 F.2d 896, 898 (9th Cir.1986) .................................... 5, 15

*Oestreicher v. Alienware Corp.,*
    544 F.Supp.2d 964, 973 (N.D. Cal. 2008) .......................... 14

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
    227 F.3d 489, 497 (5th Cir. 2000) ....................................... 14

*Pom Wonderful LLC v. Coca Cola Co.,*
    572 U.S. ____(2014) ............................................................ 10

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Smith v. Jackson,*
    84 F.3d 1213, 1217 (9th Cir. 1996) ..................................................5, 15

*Swartz v. KPMG LLP,*
    476 F.3d 756, 763 (9th Cir. 2007) ...........................................................6

*Torres v. JC Penney Corp.,*
    2013 U.S. Dist. LEXIS 66506, 9-10 (N.D. Cal. 2013) .............................8

*U.S. S.E.C. v. ICN Pharm., Inc.,*
    84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) .......................................5, 15

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097, 1108 (9th Cir. 2003) .......................................................5

*Von Koenig v. Snapple Beverage Corp.,*
    713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010) .......................................10

*Westlands Water Dist. v. Firebaugh Canal,*
    10 F.3d 667, 670 (9th Cir.1993) ..........................................................5, 15

*Whitaker v. Thompson,*
    248 F. Supp. 2d 1, 3 (D.D.C. 2002) .........................................................8

*Williams v. Gerber Products Co.,*
    552 F.3d 934, 938 (9th Cir. 2008) ...........................................12, 13, 14, 18

**Statutes**

Business & Professions Code § 17200 ..............................................................2

Business & Professions Code § 17500 ..............................................................2

15 U.S.C. § 1051 ...............................................................................................1

27 U.S.C. §§ 201-219 ........................................................................................9

27 U.S.C. § 205(e) .............................................................................................9

21 C.F.R. § 102.33(c) and (d) .........................................................................11

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) ................................................................passim

Federal Rule of Evidence 201(b)(2) ........................................................6

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# I. INTRODUCTION

"Simply stated labels matter." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011). "The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Id*. In fact, "[a]n entire body of law, trademark law (*see*, e.g., 15 U.S.C. § 1051 et seq. [Lanham Act] ), exists to protect commercial and consumer interests in accurate label representations…because consumers rely on the accuracy of those representations in making their buying decisions. *Id*.

Defendant JIM BEAM BRANDs CO, d.b.a. JIM BEAM ("Defendant" and/or "Jim Beam") seeks to capitalize on consumers' reliance on the representations Defendant makes on the labels of its "Jim Beam Bourbon – Kentucky Straight Bourbon Whiskey" ("Jim Beam Bourbon"). Defendant manufactures, markets, and sells Jim Beam Bourbon. *See* Plaintiff's Class Action Complaint, Dkt. No. 1 ("Complaint"), ¶ 27. All Jim Beam Bourbon bottles claim the product is "Handcrafted." [Complaint, ¶ 31]. However, Defendant's Jim Beam Bourbon was and is not "Handcrafted," as photographs and video footage of Defendant's manufacturing process clearly demonstrate that Defendant actually employs mechanized and/or automated processes to manufacture and bottle its bourbon. [Complaint, ¶¶ 2, 16, 36 and 38-63]. "Handmade" and "handcrafted" are terms that consumers have long associated with higher quality manufacturing and high-end products. [Complaint, ¶ 17]. Defendant's conduct is not only injurious to consumers who purchase Defendant's bourbon in reliance on these false and misleading representations, but also to other businesses in the marketplace that actually handcraft their bourbon or lower the price of their bourbon to account for the lower quality and mass production. Defendant misrepresents its product to acquire an unfair advantage in the marketplace.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Based upon Defendant's false and misleading advertising and unfair business practices, Plaintiff brought the following action on behalf of himself and others similarly situated, alleging violations of (1) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 et seq., (2) California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500 et seq., (3) negligent misrepresentation and (4) intentional misrepresentation. [Dkt. No. 1].

Despite the evidence presented in Plaintiff's Complaint, Defendant moves to dismiss Plaintiff's claims because: (1) Defendant's label is pre-approved by the Alcohol and Tobacco Tax and Trade Bureau ("TTB"); (2) Plaintiff has not plausibly alleged a likelihood of deception; (3) Plaintiff cannot state a claim for intentional misrepresentation; and, (4) the economic loss doctrine bars Plaintiff's claims of negligent misrepresentation. [Defendant Jim Beam Brands Co.'s Motion to Dismiss Complaint, Dkt. No. 5-1 ("Defendant's Motion"), p. 4-17].

However, the question of whether Defendant's advertisement violates the UCL or FAL is a factually driven which is inquiry inappropriate for resolution on a motion to dismiss. Moreover, Defendant's arguments must fail as Plaintiff's claims are not barred by California's safe harbor doctrine and Plaintiff has sufficiently stated claims under the UCL, FAL and intentional misrepresentation. For these reasons, and as further discussed herein, Defendant's motion should be dismissed.

## II.   STATEMENT OF FACTS

Plaintiff Scott Welk ("Plaintiff") filed the present action on February 17, 2015, against Defendant Jim Beam. Dkt. No. 1. Based upon Defendant's false representations that its Jim Beam Bourbon is "Handcrafted" when it in fact is manufactured via an automated and/or mechanized processes involving little to no human supervision, assistance or intervention, the Complaint alleges: (1) violations of the UCL, (2) violations California's FAL, (3) intentional misrepresentation and (4) negligent misrepresentation. [Complaint, ¶¶ 4, 16 and 19].

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Contrary to Defendant's claim that its Jim Beam Bourbon is "Handcrafted," photographs and video footage of Defendant's manufacturing process, some of which belongs to Defendant, indicate that Jim Beam Bourbon is not truly "Handcrafted." [Complaint, ¶¶ 16, 32, 33, 38, 40, 43, 46, 51, 52, 55, 57, 58, 59, 61 and 62]. Defendant actually utilizes mechanized and/or automated processes, involving little to no human supervision, assistance or intervention, to manufacture and bottle its bourbon product, including, but not limited to: (1) the process involved in transporting and grinding up the grains; (2) the process involved in mixing the grains with other ingredients, such as yeast and water; (3) the process involved in transferring this mixture into its fermenting location; and, (4) the process involved in bottling the bourbon. [Complaint, ¶¶ 2, 19, 32, 33, 38, 40, 43, 46, 51, 52, 55, 57, 58, 59, 61 and 62].

More specifically, Plaintiff's complaint alleges that Defendant's grains, which are stored in silos, are transported to a near by storage area via an automated or mechanized system of cranes and tubes. [Complaint, ¶¶ 40-41]. From there, the grains are mashed via an automated and mechanized hammer mill. [Complaint, ¶¶ 42-48]. Defendant's own website claims that "[h]ammer mills grind our 'mash spill' – our top secret mix of corn, rye and barely malt."[1] A hammer mill is by definition a machine whose purpose is to grind or crush materials, such as grains, into smaller bits.[2] The mash, produced via the hammer mill, is then transported and mixed with other ingredients via a mechanized and/or automated process, which also involves little to no human supervision, assistance or intervention. [Complaint, ¶¶ 50-53]. Notably, photographs of Defendant's manufacturing process show the intricate systems of pipes and tubes going to each mash tub and, more importantly, the engines mounted on top of each tub. [Complaint, ¶ 52(A), (C), and (D)]. The mixture produced in the mash tubs is then transferred to a large fermenting tank

---

[1] *See,* http://www.jimbeam.com/about-bourbon/the-bourbon-process.
[2] http://encyclopedia.thefreedictionary.com/hammermill.

with an elaborate piping system and electronic control panels that control this, which also involves little to no human supervision, assistance or intervention. [Complaint, ¶¶ 55-57]. Subsequently, the mixture is distilled and transferred by means of a mechanized, automated process into oak barrels to age. [Complaint, ¶¶ 58-59]. The only human involvement in this process is to release a lever, which fills the barrels; everything else, including the transportation of the liquid, appears to be achieved with no real human intervention or assistance. [Complaint, ¶ 60]. Finally, after Defendant's bourbon has aged, Defendant fills its bottles using a series of machines and pipes that are also automated, mechanized, and involve little to no human supervision, assistance or involvement. [Complaint, ¶ 62].

Thus, despite knowing that its product is manufactured through automated and/or mechanized processes, Defendant markets its Jim Beam Bourbon, via the product's label, as "Handcrafted." [Complaint, ¶ 32; *see also* Exhibit A to Defendant's Motion, Dkt. No. 5-3]. Defendant attaches these untrue and misleading labels to all of the Jim Beam Bourbon bottles it markets and sells throughout the state of California and throughout the United States. [Complaint, ¶¶ 3, 18 and 31]. Defendant is aware that consumers are willing to pay more for products of higher quality; and for that reason Defendant attempts to market Jim Beam Bourbon as being of higher quality and workmanship by virtue of it being *crafted* by *hand*. [Complaint, ¶¶ 18 and 69].

As a result of these misrepresentations, Defendant has induced Plaintiff and similarly situated consumers to rely upon and purchase, and ultimately pay more for Jim Beam Bourbon under the belief that the bourbon they purchased was of superior "Handcrafted" quality. [Complaint, ¶ 18, 22, 35, 65, 66, 102 110, 117 and 120]. Had Plaintiff and putative class members been made aware that Defendant's bourbon was not in fact "Handcrafted," they would not have purchased the product, would have paid less for it, or would have purchased a different product. [Complaint, ¶ 22, 64, 80 and 102]. Therefore, Plaintiff and putative class members

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

suffered injury in fact and lost money and/or property as a result of Defendant's misrepresentations. [Complaint, ¶ 23].

## III. LEGAL STANDARD

On a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, "[a]ll allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must also "draw inferences in the light most favorable to the plaintiff." *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); see also *U.S. S.E.C. v. ICN Pharm., Inc.,* 84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) ("The court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the Plaintiff.") (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

A court will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A Rule 12(b)(6) Motion to Dismiss "is viewed with disfavor and is rarely granted." *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). Therefore, a dismissal of a plaintiff's complaint, without leave to amend, is appropriate only where "it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). A dismissal for failure to state a claim with Rule 12(b)(6) "should ordinarily be without prejudice. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

In light of the foregoing standards, Defendant's Motion should be denied or, alternatively, Plaintiff should be granted leave to amend his Complaint.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# IV. ARGUMENT

## A. <span>DEFENDANT IMPROPERLY RELIES ON FACTS OUTSIDE THE COMPLAINT</span>

As this Court is well aware, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Defendant's motion to dismiss is partially based on facts outside the four-corners of Plaintiff's Complaint, which, as explained above, should not be considered in the present motion. Specifically, Defendant's supposed interaction with TTB consists of factual allegations outside Plaintiff's Complaint [Defendant's Motion, p. 4-8].

Although Defendant requests judicial notice as to its interaction with TTB, Defendant does not provide any reason for such a request. Defendant merely restates the language of Rule 201(b)(2) without any further explanation as to why judicial notice is warranted. Defendant claims judicial notice is warranted "because the fact of label approval (i.e., the Certification of Label Approval) can be 'accurately and readily determined from resources whose accuracy cannot reasonably be questioned,' within the meaning of Federal Rule of Evidence 201(b)(2)." *See* Defendant's Request for Judicial Notice, Dkt. No 5-2. However, without a further explanation as to why the Court should consider such facts, Defendant's request for judicial notice is unsupported. Therefore, this Court should disregard Defendant's discussion of "facts" stemming from outside the Complaint.

## B. <span>PLAINTIFF'S CLAIMS ARE NOT BARRED BY CALIFORNIA'S SAFE HARBOR DOCTRINE</span>

### 1. The Safe Harbor Standard And Defendant's Contention

Although California recognizes a "safe harbor" defense that precludes a plaintiff from "plead[ing] around an absolute bar to relief simply by recasting the cause of action as one for unfair competition," *Cel–Tech Communications, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 182 (1999), to forestall an action under the

unfair competition law, another provision must actually '**bar**' the action *or* "**clearly permit the conduct**." *Cel-Tech*, 20 Cal. 4th 182-183. Additionally, the safe harbor may also forestall an action under the unfair competition law if a regulation promulgated by a state or federal agency "**clearly permit[s]**," or "**indeed require[s]**," the allegedly deceptive behavior. *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1165 (9th Cir. 2012). Accordingly, the safe harbor doctrine is narrow (*Beaver v. Tarsadia Hotels,* 2014 U.S. Dist. LEXIS 90600, 9 (S.D. Cal. July 1, 2014); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)), and should only be applied if there is some authority (i.e., either (1) state or federal legislation, or (2) regulations promulgated by a state or federal agency) that actually *bars* the action, or *clearly permits* or *requires* the alleged conduct.

Defendant's Motion fails to set forth that (1) a state or federal statute directly "bars" Plaintiff's action, (2) a state or federal statute "clearly permits" Defendant to label its bourbon "Handcrafted" when it is in fact made via automated and/or mechanized processes, or (3) regulations promulgated by a state or federal agency "clearly permit" or "require" Defendant's deceptive behavior. Rather, Defendant argues it is insulated from liability for its misrepresentations on its white label Jim Beam Bourbon bottles because Defendant's label was reviewed and pre-approved by TTB, the federal agency responsible for enforcing labeling requirements for alcoholic beverage pursuant to the Federal Alcohol Administration Act ("FAAA"). [Defendant's Motion, p. 4-8]. Defendant reasons that since its label was approved by TTB, Plaintiff's claims against Defendant regarding the contents of Defendant's label should be precluded under California's "safe harbor" doctrine, including Plaintiff's claims under the UCL and FAL. However, for the reasons stated below, this is not a proper application of the safe harbor doctrine and not supported by recent precedent.

//

## 2. Defendant Misapplies The Safe Harbor Doctrine As Pertaining To Labeling Laws

Although Defendant attempts to analogize the current case to other consumer actions concerning alleged misrepresentations of products via labels approved by federal agencies [Defendant's Motion, p. 6-8], it would contravene public policy and reason in general to immunize an alcohol manufacturer from consumer fraud suits because the labels of its products had been approved by TTB. Unlike, for example, the FDA's "rigorous" pre-approval process for drugs (*Whitaker v. Thompson*, 248 F. Supp. 2d 1, 3 (D.D.C. 2002)), the TTB's approval of alcohol labels hinges on self-reporting.[3] Thus, the TTB's approval of Defendant's label demonstrates nothing more than Defendant's repeated affirmation to the TTB that its product is truly handcrafted. It does not establish that if the TTB had known the true process by which Jim Beam Bourbon was actually manufactured, it would have concluded that Defendant's label complied with federal law.

Defendant's contention that action taken by a federal agency pursuant to federal regulation is enough to apply the "safe harbor" doctrine, misapplies the "safe harbor" doctrine, stretches it too far, and misses the point that there is a difference between (1) not making an activity unlawful, and (2) making that activity lawful; and only acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law. *Torres v. JC Penney Corp.*, 2013 U.S. Dist. LEXIS 66506, 9-10 (N.D. Cal. May 8, 2013); citing *Cel-Tech* at 183. As stated above, the safe harbor doctrine is narrow (*Beaver v. Tarsadia Hotels,* 2014 U.S. Dist. LEXIS 90600, 9 (S.D. Cal. July 1, 2014); *Chabner,* 225 F.3d at 1048). The safe harbor doctrine prohibits consumer fraud cases if: (1) a state or federal statute "*actually bar[s]* the action or *clearly*

---

[3] *See,* the TTB's application for certification/exemption of label/bottle approval: http://www.ttb.gov/forms/f510031.pdf

*permit*[s] the conduct" at issue (*see Loeffler v. Target Corporation,* 58 Cal.4th 1081 at 1125 (2014); *see also Cel–Tech.,* 20 Cal.4th at 182 ("[A] plaintiff may not bring an action under the unfair competition law if some other provision bars it."), or (2) when a regulation promulgated by a state or federal agency "clearly permit[s]," or "indeed require[s]," the allegedly deceptive behavior (*Davis,* 691 F.3d at 1165). The rationale behind the safe harbor defense is self-evident: it is unfair and impractical to expose an entity to private action for following state or federal law.

### *(a) No Authority Provided by Defendant to Establish That the Safe Harbor Doctrine Applies to Defendant's Conduct*

Defendant does no cite to any statutory or regulatory authority that **actually bars** Plaintiff's claims, or **clearly permits** or **requires** Defendant to label its Jim Beam Bourbon as "Handcrafted" when in fact it is not. *See generally,* Defendant's Motion, p. 4-8. Arguably, had there been any such language on point, Defendant would have cited it. Instead, Defendant cites to the FAAA. *Id.* at p. 5-6. However, the FAAA does not bar Plaintiff's claim, nor does it have any **clear language permitting** or **requiring** the conduct complained of by Plaintiff (i.e., the FAAA does not have clear language permitting or requiring Defendant to label its product handcrafted when it is made via automated processes). *See generally,* 27 U.S.C. §§ 201-219. In fact, the FAAA has language condemning Defendant's alleged conduct. The FAAA specifically states that "[i]t shall be unlawful for any person engaged in business as a distiller… to sell… or otherwise introduce in interstate or foreign commerce… any distilled spirits… **likely to mislead the consumer**… as to the… quality of the product." 27 U.S.C. § 205(e). Additionally, the FAAA states that Defendant may not make "statements on the label that are… false [or] misleading." *Id.* Thus, Defendant's own statutory cite actually supports Plaintiff's position in that it actually requires Defendant not to make false or misleading claims on its label.

Even if Congress has delegated to the function of reviewing and approving Defendant's label to the TTB, this alone would not bring Defendant's conduct within the protection of the safe harbor doctrine. As a general rule, the safe harbor defense is founded on statutes and regulations (*Davis,* 691 F.3d at 1166), not on **agency action**, which does not rise to the level of federal law, much in the same way as preemption. *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010) (A FDA policy "cannot be accorded the weight of federal law for purposes of the safe harbor rule...."); *see also, Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 245 (3rd Cir. 2008) (Federal preemption of state law does not occur "every time someone acting on behalf of an agency makes a statement or takes an action within the agency's jurisdiction").

> ### (b) The Case Law Cited by Defendant Supports the Notion That Defendant's Conduct Is Not Within the Protection of the Safe Harbor Doctrine

The case law cited in Defendant's own moving papers supports the notion that there must be statutory language or regulatory authority that **actually bars** Plaintiff's claims, or **clearly permitting** or **requiring** the conduct by Defendant. For example, in *Pom Wonderful LLC v. Coca-Cola Co.* the plaintiff alleged that defendant Coca-Cola misled consumers into believing Coco-Cola's Pomegranate Blueberry juice consisted primarily of pomegranate and blueberry, when it actually consisted of less expensive apple and grape juice. Specifically, the juice's label stated "Pomegranate Blueberry" and underneath it, in smaller font, it also displayed the text "flavored blend of 5 juices." In reality the juice contained 99.4% apple and grape juice, 0.1% raspberry juice, and only 0.3% pomegranate and 0.2% blueberry juice. Unlike here, in *Pom,* the court found defendant was within the protection of the safe harbor doctrine because the FDA had **specific language** allowing merchants to advertise its product in such a way. *See Pom Wonderful LLC v. Coca-Cola Co.,* 572 U.S. ___ (2014). Specifically, the FDA

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

"concluded that manufactures of multiple juice beverages may identify their beverages with a non-primary, characteristic juice, as Coca-Cola does here." *Id.*; *see also,* 21 C.F.R. § 102.33(c) and (d). Similarly, in *Kuenzig v. Hormel Foods Corp.,* 505 F. App'x 937 (11th Cir. 2013), another case cited by Defendant, the Florida safe harbor doctrine shielded defendant from a consumer's misrepresentation claim because defendant's conduct was *specifically* permitted by federal law (i.e., there was specific regulatory language from the USDA that defendant complied with). *Id.* at 939. As Defendant states in its moving papers, "[defendant's] labels complied with federal regulations regarding the use of percentage fat-free claims…" *Id.*

In the instant matter, unlike the cases cited in Defendant's Motion, the TTB lacks similar language specifically permitting Defendant to advertise its product in such a way. The TTB does not allow alcohol makers to claim "handcrafted" or "handmade" on its labels, even if only part of the process is "handcrafted." Had the legislature truly indented to allow merchants to label their products as "handcrafted" when in fact partially or wholly manufactured through automated and/or mechanized processes, it would have clearly stated so, as would be required for the safe harbor doctrine to apply.

### (c) Recent Authority Supports Plaintiff's Position

This Court has recently struck down Defendant's exact argument in a similar "Handmade" misrepresentation action. *See Hofmann v. Fifth Generation, Inc.,* Case No. 3:14-cv-02569 (S.D. Cal 2015), Dkt No. 15, attached hereto as Exhibit A. In *Hofmann,* on a similar Rule 12(b)(6) motion*,* defendant, a vodka manufacturer that labels its product "Handmade," similarly argued that plaintiff's misrepresentation claims were barred by California's Safe Harbor Doctrine because the TTB had pre-approved defendant's label. *Id.* However, upon review, the court concluded that defendant had not shown that the safe harbor barred the plaintiff's claims; and "from the regulations [defendant] provided to the court and

the apparent absence of any guidance from the TTB regarding the meaning of the word "Handmade," it is not clear that such representations are necessarily within the TTB's regulatory purview. Thus, **it is not clear at this point that the TTB's approval of the labels is sufficient to invoke the safe harbor [doctrine]**." *Id.*. Similarly here, Defendant has not shown that the safe harbor doctrine bars Plaintiff's claims in this matter or that Defendant's "Handcrafted" representations are within the TTB's regulatory scope. Thus, it is unclear whether the TTB's approval of Defendant's labels is sufficient to invoke safe harbor.

### C. PLAINTIFF HAS STATED VALID CLAIMS UNDER UCL AND FAL

Defendant argues Plaintiff's UCL and FAL claims fail because the "reasonable consumer" would not have been deceived by Defendant's label. Defendant's Motion, p. 8; *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003) (reasonable consumer standard applies to UCL false advertising claims); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (reasonable consumer standard applies to FAL advertising claims). Specifically, Defendant argues Plaintiff's UCL and FAL claims fail because: "(1) the statement at issue appears only once, in small font on the side label of the product; (2) Plaintiff's allegations demonstrate that he read the word "handcrafted" out of context; (3) the "Handcrafted" statement is not a specific and measurable claim; (4) common sense defies Plaintiff's proffered interpretation of the statement; and (5) the "handcrafted" statement could not have misled Plaintiff in light of his own allegations that videos and photographs admittedly available on Jim Beam's own public website demonstrate the actual production process for Jim Beam's white label bourbon." [Defendant's Motion, p. 9]. However, for reasons stated herein and below, Defendant's arguments are unsupported and Defendant's motion to dismiss should be denied.

//

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## 1. The Reasonable Consumer Inquiry Is Premature

Defendant attempts to impose the reasonable consumer standard in its 12(b)(6) motion (Defendant's Motion, p. 8-13) despite California courts recognizing that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Whether an advertisement is deceptive often turns not only on the language of the advertisement itself, but also on extrinsic evidence, such as consumer surveys. *Id.* at 938-39 (explaining that determining "[w]hether a practice is deceptive, fraudulent, or unfair" generally "requires consideration and weighing of evidence from both sides") (*quoting*, *Linear Technology Corp. v. Applied Materials, Inc.,* 152 Cal.App.4th 115, 134-135 (2007)); *see also Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) (explaining that the "meaning a reasonable consumer would ascribe" to a term is "not a question that can be resolved on a Rule 12(b)(6) motion"). Thus, how a reasonable consumer would construe the term handcrafted cannot be resolved without discovery and/or expert testimony. *See Williams*, 552 F.3d 934, 938. In fact, Defendant concedes this notion when it argues that the term "Handcrafted" is not a "specific and measurable claim."[4] [Defendant's Motion, p. 11-12]. Accordingly, motions to dismiss deceptive business practice claims should be granted only in "rare" situations, when the advertisement at issue is patently puffery, or where the allegations of deception are otherwise implausible. *Id.* at 938-939.[5]

---

[4] Defendant argues, "'handcrafted,' particularly in the context of distilled spirits, is a general subjective term that is not subject to measurement (Defendant's Motion, p. 11-12). Further, Defendant argues the term "handcrafted" is "generalized and vague." *Id.* By Defendant's own acknowledge it is unclear what a reasonable consumer would interfere by the term "handcrafted," which is why the application of and determination of this standard is premature.

[5] The *Williams* Court pointed to *Freeman v. Time, Inc.,* 68 F.3d 285 (9th Cir. 1995) as an example of the "rare" situation where it was appropriate to dismiss a

In this case, Defendant's "Handcrafted" labels are not obvious non-actionable puffery. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) (finding that puffery exists when there is: "(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion."). The term "Handcrafted" is not an "exaggerated, blustering and boasting" statement upon which no reasonable buyer would be justified in relying. *Anunziato v. eMacchines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (holding that the term "reliability" is puffery because it is "inherently vague and general"). Further, "Handcrafted" is not a generalized claim of superiority that is so vague that it can be understood as nothing more than a mere expression of opinion. *Oestreicher v. Alienware Corp.,* 544 F.Supp.2d 964, 973 (N.D. Cal . 2008) (explaining that "'higher performance,' 'longer battery life,' 'richer multimedia experience,' 'faster access to data' are all non-actionable puffery."). Instead, Defendant's label is a specific claim about the method by which the product is produced/manufactured (i.e., handcrafted). Further and as explained below, Plaintiff's allegations of deception are not implausible. *Williams,* 552 F.3d at 938-939. "Handcrafted" is a definite statement. Put simply, Defendant's product is either hand crafted or it is not.

---

consumer fraud case for failure to allege a plausible deception to a reasonable consumer. *Williams*, 552 F.3d at 939. There, a plaintiff alleged that mailers he had received fraudulently suggested that he had won a million dollar sweepstakes. But the mailer explicitly stated multiple times that the plaintiff would win the prize only if he had the winning number. "Thus, it was not necessary to evaluate additional evidence regarding whether the advertising was deceptive, since the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id*. (citing *Freeman*, 68 F.3d at 285). There is no similar language on Defendant's label (i.e., language stating that the "Handcrafted" mark is not true).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## 2. Plaintiff Has Alleged a Likelihood of Deception Under The UCL And The FAL

Even if the Court applied the reasonable consumer standard at this early stage, which Plaintiff opposes, Plaintiff can easily satisfy the requirements of both UCL and FAL claims. To show deception under the UCL and FAL based on product packaging, the plaintiff must plausibly plead that (1) they relied on product's packaging and were deceived, and (2) a reasonable consumer would likely be deceived. *Figy v. Frito-Lay N. Am., Inc.*, No. 13-3988 SC, 2014 WL 3953755, at *9 (N.D. Cal. Aug. 12, 2014). "The California Supreme Court has found 'that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams,* 552 F.3d at 938; *citing, Kasky v. Nike, Inc.*, 27 Cal. 4th 939, (2002).

Plaintiff has easily satisfied the first element of the UCL and FAL as Plaintiff has properly alleged the elements of his UCL and FAL claims with facts as they pertain to Plaintiff. Specifically, Plaintiff has pled that he relied on Defendant's "Handcrafted" label when purchasing Defendant's product, and that therefore he was deceived into buying a lower quality product. [Complaint, ¶ 35, 65, 66, 102 110, 117 and 120]. Further, Defendant's attempts to argue the factual allegations is improper in a 12(b)(6) motion as the Court must accept the factual allegations of Plaintiff's Complaint as true and all reasonable inferences must be drawn in the light most favorable to Plaintiff. *See Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *see also Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see also U.S. S.E.C. v. ICN Pharm., Inc.,* 84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

//

Notwithstanding the fact that Defendant's factual arguments are improper at this stage, Defendant cannot reasonably argue that the term "Handcrafted" does not have the capacity to persuade the reasonable consumer into believing that Defendant's product is *crafted* by *hand*. In fact, Plaintiff, who is a reasonable consumer, was deceived into believing that Defendant's Jim Beam bourbon was crafted by hand, when it in fact is not. [Complaint at ¶ 18, 20, 22, 35, 25 77, 90, 94 and 98]. Defendant attempts to downplay its misconduct by arguing that the font, location, and context of its "Handcrafted" statement could not mislead the reasonable consumer. [Defendant's Motion, p. 10-11]. However, it would contravene public policy and reason to allow misrepresentations on a product's label simply because the misrepresentations are not the focus of the label or could be interpreted in some other obscure way.

### (a) The Case Law Cited in Defendant's Moving Papers Supports Plaintiff's Claims

The case law cited in Defendant's Motion supports Plaintiff's claims. *Id*. To summarize, Defendant's case law finds that a reasonable consumer, after seeing a misrepresentation on the product's label, is not expected to search and learn the truth about the product via some other small print on the label, especially if this print is located in an non-obvious location, like the side of a box. *Id*; *see also Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) ("[A]t the pleading stage, the Court cannot conclude that a reasonable consumer should be expected to ... discover the truth in the small print"); *Williams,* 552 F.3d 934, 939 ("disagree[ing] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[A] reasonable consumer might ... overlook the smaller text that discloses the fat content").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Defendant misapplies the intentions of the court in the aforementioned cases. By finding that merchants may not escape misrepresentation claims by including the truth in small print on some other location of the label, the court is effectively telling merchants that there are no excuses for making misrepresentations on a product's label. This is in line with the reasoning from *Williams*, which found that the UCL and FAL "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Williams, 552 F.3d at 938; *citing, Kasky v. Nike, Inc.*, 27 Cal. 4th 939, (2002). Accordingly, defendants cannot escape liability for label misrepresentations, including misrepresentations that are explained by the fine print of a label, or, as in this case, misrepresentations that are not necessarily the main focus of the label, but nonetheless displayed for consumers on the label of Defendant's product.

### (b) Defendant's "Handcrafted" Representation Appears Prominently On the Label of Defendant's Product

As demonstrated Defendant's own exhibit, a purchaser of Jim Beam Bourbon could easily see and read the "Handcrafted" representation, which is both easily noticeable and clearly legible. [Defendant's Motion, Exhibit A]. The "Handcrafted" mark is proportional to the other marks on the label; and, in some cases, even bigger than other language on the label. *Id.* Further, although Defendant refers to "side labels" (*see* Defendant's Motion, p. 10), there are no such separate and individual side labels. [Defendant's Motion, Exhibit A]. Defendant's label is one continuous label that stretches across the bottle. *Id.* Thus, a reasonable consumer could easily see and read the "Handcrafted" mark on Defendant's product.

Defendant also argues its "Handcrafted" representation should be read in context with the graphic depiction relating to the family recipe. [Defendant's Motion, p. 10]. However, Defendant's interpretation of the handcrafted mark is

obscure and not reflective of what a reasonable consumer would understand by the mark. Read word for word, the mark states, "Handcrafted, since 1975, Family Recipe." [*See* Defendant's Motion, Exhibit A]. Even in context, Plaintiff or any similarly situated reasonable consumer would not likely interpret Defendant's label to mean that Defendant's "Handcrafted" representation only pertains to Defendant's family recipe (i.e., the list of ingredients and instructions on using those ingredients to make bourbon) and not Defendant's product itself. Defendant's argument is illogical and reaches too far as it would be irrational to argue that the "Handcrafted" representation on the label pasted on Defendant's bourbon does not refer to the bourbon itself. Thus, Defendant cannot use this argument to skirt around liability for its misrepresentations.

Indeed, common sense would dictate that "Handcrafted" means that Jim Beam Bourbon is *crafted* by *hand*, or, at the very least, crafted by handheld tools. Merriam-Webster Dictionary defines the term "Handcrafted" in a single sentence as "created by a hand process rather than by a machine." While it may be true that bourbon may not be made without certain primitive tools, bourbon can and is made without complex, automated machines that involve little to no human intervention, assistance or supervision.

### (c) Defendant Imposes The Burden On Plaintiff and Consumers To Discover the Facts Underlying the "Handcrafted" Claim On Defendant's Product

Defendant argues that the "Handcrafted" representation is not misleading because Defendant's actual production process is available to the public through Defendant's website. [Defendant's Motion, p. 14]. Defendant further contends that "a statement cannot be misleading where the advertiser expressly discloses to the buying public the objective facts underlying that statement." *Id.* However, this assumes and **puts the burden on consumers to search for the truth** about Defendant's handcrafted mark prior to purchasing Jim Beam Bourbon. Moreover,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1  disclosing the product's actual process via some extrinsic source cannot and does

2  not excuse Defendant's conduct of misrepresenting the product via its label, which

3  is what a consumer sees and generally relies upon at the moment of picking a

4  product for purchase.

5  Defendant's reasoning that the truth about its product is otherwise available

6  is contradictory to the case law that Defendant cited in support of its argument

7  that, due to the size and location of the handcrafted mark, the reasonable

8  consumer would not be mislead. *See Lam*, 859 F. Supp. 2d at 1104 ("[A]t the

9  pleading stage, the Court cannot conclude that a reasonable consumer should be

10  expected to ... discover the truth in the small print"); *Williams,* 552 F.3d at 939

11  ("disagree[ing] with the district court that reasonable consumers should be

12  expected to look beyond misleading representations on the front of the box to

13  discover the truth from the ingredient list in small print on the side of the box");

14  *Koenig*, 995 F. Supp. 2d at 288 ("[A] reasonable consumer might ... overlook the

15  smaller text that discloses the fat content"). Since the reasonable consumer is not

16  expected to look for the truth in the small print or beyond the front of a label, why

17  would s/he be expected to look for the truth on Defendant's website, which is not

18  even listed on the product's label.

19  Not only is Defendant's line of reasoning contradictory to the cases cited in

20  Defendant's Motion (*see supra*), but Defendant's label does not have any

21  language qualifying its "Handcrafted" mark as something other than its commonly

22  understood dictionary meaning.  Further, there is no mention of Defendant's

23  website anywhere on Defendant's label.  [Defendant's Motion, Exhibit A].  In

24  *Manchouck*, a case cited by Defendant, the court dismissed plaintiff's claims

25  premised on statements that Defendant's cookies were "made with real fruit"

26  because the "list of ingredients on the packaging serve[d as] notice to consumers

27  that the products contain 'Raspberry Puree' and 'Strawberry Puree' respectively."

28  *Manchouck v. Mondelez Int'l Inc.,* 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

2013). Unlike *Manchouck* and the other cases cited in Defendant's Motion, Defendant did not disclose on its label, or anywhere else, that its product is not truly "Handcrafted." [Defendant's Motion, Exhibit A]. Furthermore, Defendant's label does not even direct consumers to its website or anywhere else where this information is disclosed. *Id.*

### (d) Public Policy

Defendant's argument that it should not be held liable for the misrepresentation that its product is "Handcrafted" because the truth about Defendant's product is available elsewhere for a consumer to find is wholly unfair to consumers and against public policy. In making this argument, Defendant suggests that the Court should allow Defendant to make misrepresentations on its product's label so long as Defendant makes the truth available on a website where consumers are not likely to look when purchasing Defendant's product in a store. Plaintiff and other reasonable consumers justifiably relied on the words and descriptions on the product's label at the time they purchased Defendant's product, as a label is purposefully attached to something to identify or describe it.[6] Defendant intentionally placed the word "Handcrafted" on the label to describe its bourbon; and as the party offering the description on its label for the public to rely upon, Defendant cannot require consumers to make an independent investigation to verify the veracity of Defendant's claim that its bourbon is "Handcrafted." As a matter of public policy, Defendant should be held to the representations it makes to consumers on the label Defendant attaches to its Jim Beam Bourbon.

Based on the foregoing, it is not only is it premature to consider and evaluate the reasonable consumer standard during the present 12(b)(6) motion, but Plaintiff has also (1) pled the threshold requirements under the UCL and FAL for

---

[6] Merriam-Webster Dictionary defines "label" as: a piece of paper, cloth, or similar material that is attached to something to identify or describe it. http://www.merriam-webster.com/dictionary/label

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1   the purposes of overcoming a 12(b)(6) motion and (2) shown that a reasonable

2   consumer would likely be deceived by Defendant's label.

3   **D.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR
           INTENTIONAL MISREPRESENTATION**

4

5   The essential elements of a count for intentional misrepresentation are (1) a

6   misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance,    (4)

7   actual and justifiable reliance, and (5) resulting damage. *Chapman v. Skype Inc.,*

8   220 Cal. App. 4th 217, 230-231 (Cal. App. 2d Dist. 2013). Defendant argues that

9   Plaintiff has not alleged an intentional misrepresentation claim because (A)

10  Plaintiff has not and cannot plead that the challenged statement would mislead a

11  reasonable consumer such that they could have reasonably relied on it, and (B)

12  Plaintiff has not and cannot allege that Defendant acted with the requisite

13  fraudulent intent to deceive. [Defendant's Motion, p. 15-16]. However, as

14  explained below and herein, Defendant cannot circumvent liability for its

15  misleading misrepresentations on the labels of its Jim Beam Bourbon bottles.

16  **1.   A Reasonable Consumer Could Reasonably Rely On
           Defendant's Misrepresentation That Its Product Is
           "Handcrafted"**

17

18  As explained above, Defendant's argument that Plaintiff and consumers

19  could not reasonably rely on the "Handcrafted" representation that Defendant

20  placed on its product's labels and advertising is unsupported, and more

21  importantly premature at this stage. *See supra* Section IV(C)(1) and (2). The court

22  should dismiss deceptive business practice claims only in "rare" situations, when

23  the advertisement at issue is patently puffery, or where the allegations of

24  deception are otherwise implausible. *Williams,* 552 F.3d 934, 938-939. As

25  discussed above, Defendant's representation that its bourbon is "Handcrafted" is

26  not an obvious non-actionable puffery (*see Chacanaca v. Quaker Oats Co.,* 752 F.

27  Supp. 2d 1111, 1125 (N.D. Cal. 2010) (declining to hold at the motion to dismiss

28  stage that the term "wholesome" was too vague to mislead a reasonable consumer,

despite the fact that the term might reasonable construed to have several different meanings); nor are Plaintiff's allegations of deception implausible (*Williams,* 552 F.3d 934, 938-939; *see also supra* Section IV(C)(2)).

Thus, Defendant's argument that Plaintiff and consumers could not reasonably rely on the "Handcrafted" representation that Defendant placed on its product's labels and advertising is unsupported, and more importantly premature at this stage.

### 2. Plaintiff Has Sufficiently Alleged Defendant's Fraudulent Intent

Defendant contends that the disclosure of its distilling and bottling process insulates Defendant from intentional misrepresentation claims. Defendant's Motion, p. 15-16. As a preliminary matter, this argument fails for the reasons discussed above under Section IV(C)(2).[7] As stated there, this argument is dependent on the assumption that all consumers will actually visit Defendant's website prior to their purchase and that they will actually find, and subsequently watch, the pictures and video posted on the website. Notably, Defendant's label does not even inform consumers of its website. [Defendant's Motion, Exhibit A]. It would be wholly unfair and contradicts common sense and public policy to allow fraudulent or misleading misrepresentations to be made to consumers in the advertising of products simply because the truth about the product is available for the consumer to find. Further, Defendant's argument is effectively an admission that its product is not truly "Handcrafted" as represented on its label.

In the instant matter, Plaintiff purchased Defendant's product in person and only after seeing and relying on the product's label. [Complaint, ¶¶ 34, 35 and 66]. The Complaint does *not* allege that Plaintiff or the putative class members ever visited Defendant's website *prior to* purchasing the falsely labeled product,

---

[7] This argument is a duplicate of Defendant's fifth point made in support that the reasonable consumer would not likely be deceived under the UCL and FAL. *See supra* IV(C)(2); *see also* Defendant's Motion, p. 14.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

giving them the knowledge that Defendant's product was not actually "Handcrafted" or aware of Defendant's true manufacturing process. Even if Defendant's website provides notice as to Defendant's true manufacturing methods, Plaintiff and other putative class members, did not receive such notice *at the time they purchased the product* as the alleged notice is contained on the website and not on the product's label. Again, the label does not even direct consumers to Defendant's website. [Defendant's Motion, Exhibit A].

In *Chapman,* defendant Skype advertised its monthly telephone calling plans as "Unlimited" with a numerical "footnote" superscript appearing immediately after the word unlimited. *Chapman,* 220 Cal. App. 4th at 223. The footnote directed the reader to the terms of Skype's "Fair Usage Policy" which disclosed and described limits on how many calls could be placed per month. *Id*. Like Plaintiff, the plaintiff in *Chapman* filed suit under the UCL and FAL, but also for intentional and negligent misrepresentation, alleging Skype falsely advertised its calling plans as "Unlimited" when if fact they are limited as to the number of minutes and the number of calls. *Id*. at 222. The lower court sustained a Demurrer on the basis "the term 'Unlimited' was qualified by the footnote on the same Internet page" *Id*. at 223. However, on appeal, the court reversed observing that only qualifications that are "conspicuous and apparent" could *possibly* qualify misleading advertisements. *Id*. at 228. The court in *Chapman* relied upon California Supreme Court precedent to express strenuous doubt as to whether any such qualifying language could actually absolve false advertisement:

> "Moreover, the fact that Skype ultimately discloses the limits in its "Fair Usage Policy" does not excuse its practice of labeling the plan "Unlimited" in its initial dealings with potential customers. (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 876, 127 Cal.Rptr. 110, 544 P.2d 1310.)" *Chapman,* 220 Cal. App. 4th 223; citing *Chern,* 15 Cal.3d 876 ("the fact that defendant may ultimately disclose the actual rate of interest in its Truth

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

> in Lending Statement does not excuse defendant's practice of quoting a lower rate in its initial dealings with potential customers.").

Unlike *Chapman*, Defendant in this case does not even make any qualifications concerning its handcrafted mark. [Defendant's Motion, Exhibit A]. Accordingly, Defendant cannot argue that its product's label makes a "conspicuous and apparent" reference to the pictures or videos alleged to qualify Defendant's false and misleading representations, especially since Defendant's label does not even mention its website. *Id.* Moreover, the California Supreme Court has ruled that subsequent qualifications are not sufficient to absolve false advertising or unfair business practices. *Chern,* 15 Cal.3d at 876. Similarly here, the Court should reject Defendant's argument, as Defendant cannot be relieved of its liability by making subsequent qualifications about its false or misleading advertising. Therefore, Plaintiff has sufficiently alleged Defendant's fraudulent intent.

### E.  PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM

Defendant argues Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine.  Plaintiff does not oppose this section of Defendant's argument only.

## V.  ALTERNATIVE LEAVE TO AMEND

Alternatively, should this Court find any of Defendant's arguments persuasive, Plaintiff respectfully request leave to amend the Complaint to cure any such perceived deficiencies.  As this Court is well aware, leave to amend should be "freely given" when the plaintiff could cure the pleadings defects and present viable claims.  Fed. R. Civ. P. 15(a); see *Foman v. Davis*, 371 U.S. 178, 182 (1962).

//

//

//

//

## VI. CONCLUSION

Based on the reasoning above, Plaintiff's Complaint should not be dismissed, as Defendant's Motion to Dismiss is unsupported. Accordingly, Defendant's Motion should be denied, or in the alternative, Plaintiff respectfully request the Court grant leave to amend Plaintiff's Complaint.


Dated: April 20, 2015                    Respectfully submitted,

                                         **KAZEROUNI LAW GROUP, APC**


                                         By: /s/ Abbas Kazerounian
                                             ABBAS KAZEROUNIAN, ESQ.
                                             ATTORNEY FOR PLAINTIFF


**LAW OFFICE OF ANDREI ARMAS**
Andrei Armas (SBN: 299703)
245 Fischer Ave, Unit D1
Costa Mesa, CA 92626
Telephone: (858) 336-2518
Facsimile:  (800) 520-5523